**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
460 Park Avenue
New York, NY 10022-1906
(212) 742-8000
(212) 752-8393 Facsimile
Joshua J. Angel, Esq. (JA-3288)
Neil Y. Siegel, Esq. (NS-3216)
Frederick E. Schmidt, Esq. (FS-5277)

Attorneys for Attorneys for Alleged Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 06-11325 (SMB) |
| EURO-AMERICAN LODGING CORPORATION, | Chapter 7 |
| Alleged Debtor. | |

## EURO-AMERICAN LODGING CORPORATION'S TRIAL BRIEF SUBMITTED IN OPPOSITION TO ENTRY OF AN ORDER FOR RELIEF IN INVOLUNTARY CHAPTER 7 PETITION FILED AGAINST IT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ...................................................................................................................... 6

A.    THIS CASE MUST BE DISMISSED AS IT WAS FILED BY A SINGLE
PETITIONING CREDITOR AND EALC HAD 109 CREDITORS AS OF THE
PETITION DATE ........................................................................................................ 6

        RECEIVER CREDITOR GROUP ................................................................... 8

        THE GENERAL CREDITOR GROUP ........................................................... 13

B.    THIS CASE SHOULD BE DISMISSED AS A BAD FAITH FILING AS THE
PRODUCT OF A TWO-PARTY DISPUTE ............................................................. 15

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

Pages

## CASES

In re 245 Associates, LLC, 188 B.R. 743 (Bankr. S.D.N.Y. 1995)............................................10

In re 400 Madison Avenue Partnership, 213 B.R. 888 (Bankr. S.D.N.Y. 1997)..........10, 11, 12

In re Advanced Press & Litho., Inc., 46 B.R. 700 (D. Col. 1984)............................................15

In re B & B Vehicle Sales, Inc., 194 B.R. 663 (Bankr. S.D. Ala. 1996) ..................................12

In re Bean, 252 F.3d 113 (2d Cir. 2001) .................................................................................13

In re Castle Mall, Inc., 127 B.R. 336 (Bankr. D. Del. 1991) ...................................................16

In re Cohn-Phillips, Ltd., 193 B.R. 757 (Bankr. E.D. Va. 1996).................................................7

Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) .........................12

In re Dino's Inc., 183 B.R. 779 (S.D. Ohio 1995).....................................................................15

In re Eastown Co., 215 B.R. 960 (B.A.P. 6th Cir. 1998)............................................................7

In re Garland Coal & Mining Co., 67 B.R. 514 (Bankr. W.D. Ark. 1986) .........................7, 12

In Remex Electronics Ltd. V. Axl Industries, Inc. (In re Axl Industries, Inc.), 127 B.R.
        482 (S.D. Fla. 1991)......................................................................................................16

Industrial Mfrs., Inc. v. Bangor Mills, Inc., 283 A.D. 113 (1st Dept. 1953) ...........................10

In re Investment Corp. of North America, 39 B.R. 758 (Bankr. S.D. Fla. 1984).....................16

J.P. Endeavors v. Dushaj, 8 A.D.3d 440, 442, 778 N.Y.S.2d 531, 533 (2nd Dept. 2004) .......10

Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.), 61 B.R. 614 (9th Cir. B.A.P. 1986).........15

Johnson v. Homestate Bank, 501 U.S. 78, 111 S. Ct. 2150 (1991) .............................................7

In re K.P. Enterprises, 135 B.R. 174 (Bankr. D. Me. 1992).....................................................15

In re Kass, 114 B.R. 308 (Bankr. S.D. Fla. 1990) ...................................................................16

In re Kenval Marketing Corp., 84 B.R. 32 (Bankr. E.D. Pa. 1988)..........................................10

Landon v. Hunt, 977 F.2d 829 (3d Cir. 1992) ............................................................15

In re Mayhew, 194 B.R. 6 (Bankr. D. RI 1996) ........................................................12

In re Nar Jor Enterprises Corp., 6 B.R. 584 (Bankr. S.D. Fla. 1980) ........................16

In re Norris, 183 B.R. 437 (W.D. La. 1995) ...............................................................7

In re Oakley Custom Homes, Inc., 168 B.R. 232 (Bankr. D. Col. 1994) ..................15

Old Republic Ins. Co. v. Hansa World Cargo Svce., Inc., 51 F. Supp. 2d 457 (S.D.N.Y.
          1999) .......................................................................................................10

In re Paper I Partners, L.P., 283 B.R. 661 (Bankr. S.D.N.Y. 2002) .........................17

Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992) ...................12

Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 110 S. Ct.
          2126, 109 L. Ed. 2d 588 (1990) ................................................................12

Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507
          U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) ....................................12

In re Posadas Associates, 127 B.R. 278 (Bankr. D. N.M. 1991) ..............................10

In re Rothery, 143 F.3d 546 (9th Cir. 1998) ..............................................................7

In re Sevitski, 161 B.R. 847 (Bankr. N.D. Okla. 1993) ............................................10

Westerleigh Development Corp., 141 B.R. 38 (Bankr. S.D.N.Y. 1992) ...................16

In re Win-Sum Sports, Inc., 14 B.R. 389 (Bankr. D. Conn. 1981) ..........................16

**STATUTES**

11 U.S.C. § 101(5)(A) and (B) ..............................................................................7, 10

11 U.S.C. § 303(b) .................................................................................................3, 6

11 U.S.C. § 305(a)(1) ..............................................................................................17

11 U.S.C. § 362 .........................................................................................................1

11 U.S.C. § 503(b)(3)(E) ....................................................................................10, 11

11 U.S.C. §§ 503(b)(4) ............................................................................................11

43344/0002-3102745v2

11 U.S.C. § 543(c)(1)...................................................................................................11

11 U.S.C. § 543(c)(2)...................................................................................................11

11 U.S.C. § 549.......................................................................................................12, 13

## MISCELLANEOUS

2 *Collier on Bankruptcy* ¶ 303.12 (15th ed. 1979) ...................................................15

43344/0002-3102745v2

Euro-American Lodging Corporation, the above-captioned alleged debtor ("EALC" or the "Alleged Debtor"), by its attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., respectfully submits this trial brief to aid the Court in the trial, scheduled for September 27, 2006, to determine the merits of the involuntary petition (the "Petition") filed against it on June 12, 2006 (the "Petition Date") by CDR Créances S.A. ("CDR").

## PRELIMINARY STATEMENT

As more fully set forth hereafter, this involuntary chapter 7 case must either be dismissed as a matter of law, or it should be dismissed, in the discretion of the Court, in the best interest of the Alleged Debtor and its creditors. The verified Third Amended Creditors List, which the Alleged Debtor filed shows that on June 12, 2006 (*i.e.*, the Petition Date), EALC had 109 creditors. CDR, the sole petitioning creditor, has not been joined by any of the other EALC creditors in support of its petition, and accordingly, the case must be dismissed.

The case should also be dismissed attendant to CDR's consent to be bound by the orders of a French Court to be enforced in the United States by an order of extension (the "Extension Order"), in the chapter 15 case pending before this Court entitled *In re S.N.C. Summersun et cie* (case number 06-10955 ("Summersun"). Having previously agreed to be bound by the Extension Order in France, CDR has now agreed to be bound by the "*Extension Order of the Commercial Court of Antibes, France*" in connection with all matters involving EALC and Summersun in the United States. It is black letter law that this recognition of the Extension Order by CDR triggers the automatic stay provisions of 11 U.S.C. § 362. The Summersun trustee asserts that EALC's assets belong to the Summersun estate. Whether that assertion is correct or not, CDR, having agreed to be bound by the Extension Order, is enjoined from independently being able to continue any American, or French actions against EALC or its property. This case should be dismissed attendant of the Extension Order's recognition under

section 305(2)(A) which mandates dismissal or suspension of all proceedings in a case if a petition under section 1515 has been granted and the purposes of chapter 15 would be best served by such suspension or dismissal.

This chapter 7 is essentially a two-party dispute between EALC and CDR (whose claims are now against the Summersun estate) as an alleged secured lender. There are already various actions in American courts disputing various elements of the CDR claims. Those actions include, *inter alia*, the foreclosure proceeding, which is *sub-judice* in the Appellate Division of the New York State Supreme Court (hereinafter "NYSC-AD"). This Court recognized the utility of having this litigation continue in the state court system when it entered an order, on August 2, 2006, partially lifting the automatic stay so to allow three appeals pending before the NYSC-AD to continue. This is not a case which belongs in the Bankruptcy Court. Accordingly, the Court should abstain from hearing this case and order its dismissal pursuant to section 305(a).

**BACKGROUND**

EALC owns the land and a 46-story building located at 135 West 52nd Street in Manhattan (the "Flatotel Property"). Since May 2003, the Flatotel Property has been operated by a Receiver (defined below) as a hotel and office complex under the "Flatotel" name and mark.

CDR commenced this chapter 7 proceeding (the "Involuntary Proceeding"), by filing as sole petitioner, the Petition. EALC responded to the Petition by filing an answer (the "Answer"), on June 30, 2006, contesting the allegations contained in the Petition and asserting, *inter alia*, that it had twelve or more creditors as of the Petition Date.[1] On August 7, 2006, EALC filed its Third Amended Creditors List as of June 12, 2006 asserting 109 creditors which met the

---

[1]     The Court, *sua sponte* on July 18, 2006 determined to treat the Answer, in part, as a motion to dismiss.

2

statutory qualifications set forth in 11 U.S.C. § 303(b).[2] These creditors can be divided generally into three groups: (1) general creditors (including prepetition professionals); (2) CDR; and (3) receivership creditors.[3] For the Court's convenience, each of the creditors set forth on EALC's Third Amended Creditor's List as of June 12, 2006 is set forth below according to group:

| Group | Name/Address | Description | Amount Claimed |
|-------|--------------|-------------|----------------|
| CDR | CDR | Petitioning Creditor - judgment on appeal | Approx. $215,000,000 |
| General | Atlantic Bank | Mortgage and Note | $20,468,000 |
| General | Bryan Cave LLP | Legal services | $101,293.00 |
| General | Counsel Press, LLC | Printing Services | $20,231.97 |
| General | Crowe Foreign Services | Professional Services | $1,304.00 |
| General | CSC | Statutory agent for service of process | $309.00 |
| General | Davis Graber & Ward | Accounting Services | $4,350.00 |
| General | De Pardieu Brocas Maffei | Legal Services | $7,100.00 |
| General | Guy Ferreboeuf | Legal Services | 15,000 Euros (approx. $18,750.00) |
| General | First American Title | Indemnification-legal bills | $316,140.00 |
| General | Green House Reporting Inc. | Deposition Services | $732.75 |
| General | Guy Lesourd (S.C.P. - Avocat) | Legal fees | 15,000 Euros (Approx. $18,750.00) |
| General | Jenkins & Huntington | Elevator Consultant | $7,605.00 |
| General | Mina Sarwary | Legal services provided before June 12, 2006 | 6,000 Euros (Approx. $7,500.00) |
| General | Morvillo Abramowitz | Legal services | $205,218.75 |
| ~~General~~ | ~~Schindler Elevator Corp.~~ | ~~Judgment~~ | ~~$81,208.54~~ |
| General | TransPerfect Document Mgmt | Master DVD of docs produced to CDR | $65.03 |
| ~~General~~ | ~~World Business Center~~ | ~~Contested claim in litigation~~ | ~~At least $900,000.00~~ |
| Receiver | A. I. Credit Corp. | Hotel Vendor | $3,079.65 |
| Receiver | American Entrance Services | Hotel Vendor | $4,416.97 |
| Receiver | Andrew Herz, Esq. | Receiver's fees April 1, 2005 - March 31, 2006 | $501,646.55 |

---

[2]     At trial, EALC will withdraw two of these creditors, Schindler Elevator and World Business Center leaving 107 qualified creditors.

[3]     Prior to the commencement of this involuntary chapter 7 case, Andrew Herz, Esq. (the "Receiver"), was appointed as temporary receiver of the Flatotel Property by order of New York State Supreme Court Justice Debra A. James, dated May 13, 2003, in connection with an initial foreclosure proceeding commenced by CDR.  A copy of the appointment order is annexed hereto as **Exhibit "A"**.  The initial foreclosure proceeding was dismissed on February 16, 2005. CDR commenced a second foreclosure proceeding on May 27, 2005.  Mr. Herz's receivership was continued in the second foreclosure action by orders dated October 18, 2005 and March 2, 2006.

3

| Group | Name/Address | Description | Amount Claimed |
|-------|--------------|-------------|----------------|
| Receiver | Architectural Flooring | Hotel Vendor | $4,964.12 |
| Receiver | Argy Koumas | Expense Reimbursement to Hotel Employee | $669.90 |
| Receiver | Avenue of Americas Assoc. | Hotel Vendor | $160.00 |
| Receiver | Avon Electrical Supplies | Hotel Vendor | $352.22 |
| Receiver | Best Quality Mechanical | Hotel Vendor | $3,867.93 |
| Receiver | Brand Company | Hotel Vendor | $144.24 |
| Receiver | BWD Group LLC | Hotel Vendor | $60,603.51 |
| Receiver | Capital Supply Company | Hotel Vendor | $16,270.39 |
| Receiver | Carino Collections | Hotel Vendor | $10,470.67 |
| Receiver | CCA Construction Consulting | Building Expediter | $225.00 |
| Receiver | Central Parking System | Hotel Vendor | $8,910.00 |
| Receiver | Chadsworth & Haig | Hotel Vendor | $230.08 |
| Receiver | Citysearch.Com | Hotel Vendor | $301.00 |
| Receiver | CMR Audio & Visual, LLC | Hotel Vendor | $2,405.27 |
| Receiver | Columbia University | Hotel Vendor | $76,462.50 |
| Receiver | DCI-Design | Telephone maintenance | $5,548.80 |
| Receiver | Deer Park Spring Water | Hotel Vendor | $694.31 |
| Receiver | DEP/BCS | Water bill accrued as of June 12, 2006 | Estimated $5,033.00 |
| Receiver | DGA Directory of Members | Hotel Vendor | $1,930.50 |
| Receiver | Drummond American | Hotel Vendor | $337.99 |
| Receiver | Duchateau (US) Ltd. | Hotel Vendor | $1,768.10 |
| Receiver | Electric Art Co. | Hotel Vendor | $2,243.37 |
| Receiver | Elmax Builders | Hotel Vendor | $475.87 |
| Receiver | Else Delcastillo | Expense Reimbursement to Hotel Employee | $608.81 |
| Receiver | ENE Products Corporation | Hotel Vendor | $1,739.83 |
| Receiver | Event Attainment | Hotel Vendor | $1,725.60 |
| Receiver | Ezyield.Com | Hotel Vendor | $159.00 |
| Receiver | FedEx | Hotel Vendor | $1,045.37 |
| Receiver | Financial Times | Hotel Vendor | $110.00 |
| Receiver | Focal Communications, Co. | Hotel Vendor | $1,262.53 |
| Receiver | G.C.G. Risk Mgmt. Inc. | Hotel Vendor | $1,200.00 |
| Receiver | Galileo International | Hotel Vendor | $2,629.00 |
| Receiver | Gena Res Worldwide Reservation Svc. | Hotel Vendor | $9,145.34 |
| Receiver | Gilchrist & Soames | Hotel Vendor | $8,074.51 |
| Receiver | Global Crossing Telecommunications | Hotel Vendor | $2,460.04 |
| Receiver | Grainger | Hotel Vendor | $1,852.18 |
| Receiver | Hotel Plaza Athenee | Hotel Vendor | $774.45 |
| Receiver | IMC DBA 7th on Sixth | Hotel Vendor | $5,000.00 |
| Receiver | In New York Magazine | Hotel Vendor | $3,190.00 |
| Receiver | Innovative Travel Marketing | Hotel Vendor | $13,403.00 |
| Receiver | Integral Systems | Hotel Vendor | $1,500.00 |
| Receiver | Jacob Javits Center | Hotel Vendor | $1,350.00 |
| Receiver | Janovic/Plaza | Hotel Vendor | $134.22 |
| Receiver | Japan Network Group, LLC | Hotel Vendor | $271.00 |
| Receiver | John Connolly | Expense Reimbursement to Hotel | $865.20 |

4

| Group | Name/Address | Description | Amount Claimed |
|-------|--------------|-------------|----------------|
| | | Employee | |
| Receiver | Levin & Glasser, P.C. | Receiver's attorneys fees 6/1/04 – 3/31/06 | $73,073.00 |
| Receiver | Liberty Contracting Corp | Hotel Vendor | $220.00 |
| Receiver | Lodging Interactive | Hotel Vendor | $3,750.00 |
| Receiver | Manhattan Beer | Hotel Vendor | $1,019.40 |
| Receiver | Manhattan Electrical Supply | Hotel Vendor | $718.80 |
| Receiver | Mark Ranieri | Expense Reimbursement to Hotel Employee | $1,846.00 |
| Receiver | Marlan Industries | Hotel Vendor | $1,207.82 |
| Receiver | Metlife Small | Hotel Vendor | $771.08 |
| Receiver | Metromedia Software, Inc. | Hotel Vendor | $1,300.50 |
| Receiver | Metropolitan Office | Hotel Vendor | $4,969.60 |
| Receiver | Millennium Broadway Hotel | Hotel Vendor | $798.36 |
| Receiver | Montano Grant LLC | Hotel Vendor | $2,517.94 |
| Receiver | MSK Telephone Service | Hotel Vendor | $244.22 |
| Receiver | Newmarket International | Hotel Vendor | $11,766.70 |
| Receiver | NYC Fire Department | Hotel Services | $445.00 |
| Receiver | New York City Dept of Finance | Gen. Corp. Tax, + March – May, 2006 Occupancy Tax | $266,579.10 |
| Receiver | NYS Dept of Taxation and Finance | Sales Tax & Franchise Tax | $247,412.56 |
| Receiver | Novotel | Hotel Vendor | $891.42 |
| Receiver | O'Neal/Shawn | Hotel Vendor | $2,018.12 |
| Receiver | Oxford Health Plans | Hotel Vendor | $51,764.93 |
| Receiver | Performance Mechanical | Hotel Vendor | $238.43 |
| Receiver | Posner Advertising | Hotel Vendor | $489.00 |
| Receiver | Princeton Laundry | Hotel Vendor | $44,788.95 |
| Receiver | Quik Trak Messenger | Hotel Vendor | $144.00 |
| Receiver | Quinn & Co. | Hotel Vendor | $12,966.76 |
| Receiver | Qwest Communications | Hotel Vendor | $254.20 |
| Receiver | Razamataz Events | Hotel Vendor | $500.00 |
| Receiver | Send In The Clowns | Hotel Vendor | $750.00 |
| Receiver | Serta Mattress Company | Hotel Vendor | $998.13 |
| Receiver | Sparkle Maintenance | Hotel Vendor | $5,418.75 |
| Receiver | Staples, Inc. | Hotel Vendor | $1,970.59 |
| Receiver | Superior Uniform Group | Hotel Vendor | $158.16 |
| Receiver | The Athletic & Swim Club | Hotel Vendor | $520.80 |
| Receiver | The Muse | Hotel Vendor | $365.17 |
| Receiver | The Regency NYC, Inc. | Hotel Vendor | $3,371.43 |
| Receiver | Transel Elevators, Inc | Hotel Vendor | $16,803.74 |
| Receiver | Tri-State Janitorial | Hotel Vendor | $1,644.05 |
| Receiver | United Decorators | Hotel Vendor | $5,000.00 |
| Receiver | USA Today | Hotel Vendor | $1,613.88 |
| Receiver | Verizon | Hotel Vendor | $524.82 |
| Receiver | Waste Management Corp | Hotel Vendor | $2,748.01 |
| Receiver | Xerox Corporation | Hotel Vendor | $1,229.77 |
| Receiver | Zee Medical, Inc. | Hotel Vendor | $413.55 |

5

# ARGUMENT

## A.    THIS CASE MUST BE DISMISSED AS IT WAS FILED BY A SINGLE PETITIONING CREDITOR AND EALC HAD 109 CREDITORS AS OF THE PETITION DATE

This case must be dismissed since EALC had twelve or more creditors as of the Petition Date yet the only petitioning creditor was CDR.  As set forth above, EALC filed a verified list containing 109 creditors, which is obviously well above the twelve required.  Inexplicably, CDR maintains that approximately 90 of the receivership creditors listed by EALC are not creditors qualified under section 303(b).  CDR is wrong in that assertion as a matter of black letter law, and the case must be dismissed.

Section 303(b) requires three petitioning creditors for the commencement of an involuntary bankruptcy if the alleged debtor has twelve or more creditors.  The statute provides as follows:

> (b)  An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1)  by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2)  if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $12,300 of such claims.

11 U.S.C. § 303(b).

43344/0002-3102745v2

The determination of whether one or three petitioning creditors are required, therefore, hinges on how many holders of qualifying "claims" exist. The Bankruptcy Code defines a "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A) and (B).

By the foregoing language, Congress intended for the broadest possible definition of the term "claim" to apply. *Johnson v. Homestate Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154 (1991).

The debtor has the initial burden to prove that it has 12 or more creditors. *See In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998). EALC met that burden when it complied with Rule 1003(b) and filed a verified list of creditors. Once EALC on August 7, 2006 filed its verified list of creditors, the burden shifted to CDR as the sole petitioning creditor to prove that the creditors listed by EALC were not valid and that it was otherwise qualified to file an involuntary petition. *In re Eastown Co.*, 215 B.R. 960, 965 (B.A.P. 6th Cir. 1998). The Petition Date is the operative date in determining whether holders of twelve or more claims exist in this case (to wit, June 12, 2006). *In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr. E.D. Va. 1996); *In re Norris*, 183 B.R. 437, 450 (W.D. La. 1995); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 519 (Bankr. W.D. Ark. 1986). Although as hereafter discussed, day to day recurring creditors continued to be paid after the Petition Date, each of those creditors remain qualified under section 303(b) to be counted in determining whether twelve or more creditors exist.

7

**Receiver Creditor Group**

The creditor group which merits the most discussion is the "Receiver Creditor Group". That group includes the Receiver's claim for compensation, which, as of the Petition Date, was $501,646.55; the claim of the Receiver's counsel for unpaid legal fees in the amount of $73,073.00, and the claims of approximately 90 day to day recurring hotel vendors to whom the Receiver was indebted as of the Petition Date. In order to understand the legitimacy and nature of these claims, it is necessary to set forth the background regarding the receivership and the nature of the Flatotel Property operations.

Andrew Herz, Esq. was appointed as receiver ("Receiver") by order of the New York State Supreme Court on May 13, 2003 (the "Appointment Order"). The Appointment Order rendered Mr. Herz responsible for, *inter alia*, the maintenance of the Flatotel Property and the collection of all of the "earnings, rents, issues, profits, license fees and income thereof" (collectively, the "Revenue"). (*Appointment Order* at pp 2-3). Mr. Herz was authorized and directed to incur expenses in connection with the Receivership (*Appointment Order* at pp 4-5).

In complying with his obligations under the Appointment Order, the Receiver was guided by the collective desire of mortgagor and mortgagee to preserve the value of the Flatotel Property. (*See Affidavit of Andrew L. Herz, Temporary Receiver, in Opposition to Plaintiff's Application to Remove the Temporary Receiver for Cause* [hereafter, the "Herz Affidavit"] at ¶ 8. (**Exhibit "B"** annexed hereto).

According to Mr. Herz, the "most important of these principles [was] that, while exercising [his] mandated oversight functions, virtually no one [was] made aware that a temporary receiver [was] appointed, or that a foreclosure action was … pending." (*Id*). That course of dealing was important because, if such facts were generally known, "revenues would have plummeted as travel agents and others would have avoided booking guests at the hotel, and

8

other hotels would have used such fact to gain a competitive advantage." (*Id*). Equally as important, "costs would have soared as vendors would have raised prices and demanded advance payments." (*Id*). Moreover, it was also quite possible that staff would have quit and have had to be replaced. (*Id*).

In effecting his strategy to preserve value while discharging his duty, Mr. Herz implemented procedures whereby on a daily basis he received a written account mandated by him of the previous day's operations (**Exhibit "C"**), as revenue generated by the hotel were automatically swept in his account. The Receiver, with the knowledge of all parties including the New York Supreme Court ("NYSC"), continued Macson Express U.S.A., Inc. ("Macson") as the day to day operator of the hotel. With regard to expenses, the Receiver required Macson to submit vouchers for expense payment. After approving a voucher, the Receiver would then fund Macson's account for payment by check. (*Id.* at ¶¶ 9 – 11). Daily Revenue from the Flatotel Property was initially placed in a Macson concentration account, and then automatically swept each day to the Receiver's account, up to a limit of $100,000.[4]

At all times since the inception of the receivership, the Receiver has managed the Flatotel Property pursuant to an annual budget (the "Budget") prepared in the first instance by the Alleged Debtor. After its initial preparation, the Budget was reviewed by the Receiver, and CDR and then fixed. Once fixed, expenses on the Receiver's behalf in accordance with the Budget were incurred. Two to three times per week, Macson issued "check requests" to the Receiver (a form of which is annexed hereto as **Exhibit "D"**) along with the corresponding invoice or other documentation evidencing the *bona fides* of the expense to Mr. Herz who, if approval was

---

[4]    If the daily Flatotel revenues exceeded the $100,000 automated limit, Mr. Stoler would have to manually set up a wire transfer for any amount over $100,000.

warranted, then wired money to a Macson account for vendor payment, and Macson would then write checks to pay the approved obligations. Although the receivership technically terminated upon the Receiver's learning of the filing of the Petition, the payment structure of the receivership has been continued. Once the Petition is dismissed, the receivership will continue until the NYSC-AD foreclosure proceedings are concluded.

Macson dealt with the "Hotel Vendor" creditors listed in the "Receiver Creditor Group", as agent for the Receiver. It is hornbook law that in New York, an undisclosed (or even partially disclosed) principal is liable for the contracts of its agent acting within the scope of his authority or if the agent's acts are subsequently ratified by the principal. *See, e.g., Old Republic Ins. Co. v. Hansa World Cargo Svce., Inc.*, 51 F.Supp.2d 457, 471 (S.D.N.Y. 1999); *J.P. Endeavors v. Dushaj*, 8 A.D.3d 440, 442, 778 N.Y.S.2d 531, 533 (2nd Dept. 2004); *Industrial Mfrs., Inc. v. Bangor Mills, Inc.*, 283 A.D. 113, 117 (1st Dept. 1953). The Receiver expressly authorized Macson to incur expenses for his hotel operation based upon an approved budget.

Upon filing of a petition, a custodian has a claim against the estate for his compensation, costs and expenses; a custodian's attorneys and accountants have claims for their fees and expenses; and the entities to which the custodian has become indebted have claims against the estate for such indebtedness. *See In re 400 Madison Avenue Partnership*, 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997); *In re 245 Associates, LLC*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995); ); *In re Sevitski*, 161 B.R. 847, 854 (Bankr. N.D. Okla. 1993); *In re Posadas Associates*, 127 B.R. 278, 280 (Bankr. D. N.M. 1991); *In re Kenval Marketing Corp.*, 84 B.R. 32, 34 (Bankr. E.D. Pa. 1988). State court receivers are "custodians" under 11 U.S.C. § 101(11). *In re 245 Associates, LLC* 188 B.R. at 748. This Court, in *In re 245 Associates, LLC,* found that custodians are entitled to an administrative expense claim under 11 U.S.C. § 503(b)(3)(E) for

10

pre-petition fees and expenses and are entitled to payment under 11 U.S.C. § 543(c)(2) for post-petition fees and expenses incurred in the turnover process. *Id* at 748. The Court further determined that a custodian's attorneys and accountants are entitled to administrative expense claims pursuant to 503(b)(4) for their prepetition fees and expenses. *Id* at 748. Accordingly, the Receiver and his attorneys possess claims against the estate pursuant to 11 U.S.C. §§ 503(b)(3)(E), 503(b)(4) and 543(c)(2).

The Receiver's creditors also have claims against the estate pursuant to 11 U.S.C. § 543(c)(1). Section 543(c)(1) requires the Court to "protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property." *11 U.S.C. § 543(c)(1)*. The meaning of this section is so clear that there is a dearth of case law discussing its interpretation and application. That sentiment was clearly expressed in the only reported case to discuss this section, to wit, *In re 400 Madison Avenue Partnership*, 213 B.R. 888. In that case, Judge Beatty, keenly aware that interpretation of the Section did not require a "Rosetta Stone", described its meaning as follows:

> When turnover occurs, the Bankruptcy Court is required to protect the persons to whom the custodian is indebted. *See Code § 543(c)(1)*. It cannot be disputed therefore that, if the Receiver had turned the Property over to the Debtor, the Court would be required to provide for the payment of all of the Receiver's unpaid bills, including those of his counsel, subject only to a determination of reasonableness.

In re 400 Madison Avenue Partnership 213 B.R. at 898.

Unlike section 543(c)(2), section 543(c)(1) does not apply only to a receiver's creditors during the post-petition winding up phase. *In re 400 Madison Avenue Partnership*, 213 B.R. at 898. Post-petition winding up expenses of the receiver are already expressly provided for in section 543(c)(2). Accordingly, to interpret section 543(c)(1) as applying to post-petition creditors of the receiver would render it superfluous. "When interpreting the Bankruptcy Code,

11

careful attention should be paid to the actual statutory language." *In re 400 Madison Avenue Partnership*, 213 B.R at 893 *citing United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

The Receiver, with the consent of the Alleged Debtor and without objection of CDR, has not commenced the winding-up process under section 543(a) and (b) because the Petition is invalid on its face, and once this case is dismissed, the Flatotel Property will end up re-vested in NYSC receivership. Since the Petition Date, the Receiver has continued to pay the day to day bills of the hotel vendors. While, at first blush, this may appear to subject these entities to liability for unauthorized post-petition transfers under 11 U.S.C. § 549, it is not the case. Section 303(b) disqualifies any creditor who is the recipient of a transfer that is voidable under, *inter alia*, section 549 of the Bankruptcy Code. *See. e.g., In re Mayhew*, 194 B.R. 6 (Bankr. D. RI 1996); *In re B & B Vehicle Sales, Inc.*, 194 B.R. 663, 667 (Bankr. S.D. Ala. 1996); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 519 (Bankr. W.D. Ark. 1986). Section 549, however, is inapplicable to the post-petition payments made to the Hotel Vendors since the payments were not made with property of the estate.

. Section 549 provides as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B)  that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

Section 549 requires that the transfer be of *property of the estate*.  *In re Bean*, 252 F.3d

113, 117 (2d Cir. 2001).  As a matter of law (discussed below), none of the funds the Receiver

used to pay the Hotel Vendors, however, was property of the estate.  Section 541(a)(3) includes,

as property of the estate, "[a]ny interest in property that the trustee recovers under section

329(b), 363(n), 543, 550, 553, or 723 of this title.  *11 U.S.C. § 541(a)(3)*.  In *In re Colonial*

*Realty Co.*, 980 F.2d 125, 130-31 (2d Cir. 1992), the Second Circuit held that fraudulently

transferred property does not constitute property of the estate unless and until it is recovered

under section 550  The Court reasoned that section 541(a)(3) would be rendered meaningless if

such property were included as property of the estate before its recovery by the trustee. *Id* at

131.  The same reasoning applies here where the funds held by the Receiver post-petition were

never recovered under section 543.  Since the funds were not recovered, they did not become

property of the estate.  Accordingly, the payments made by the Receiver may not be avoided

under section 549 and the creditors remain qualified under section 303(b).

## THE GENERAL CREDITOR GROUP

The "General" group of creditors does not warrant as lengthy an explanation as the

"Receiver" group.  Each of the creditors on the General Group is either a direct obligation of

EALC or an obligation for which EALC is liable under agency law as the principal for its

attorneys.

Those creditors directly billing EALC are Atlantic Bank (mortgage loan), Bryan Cave

LLP (legal), CSC (agent for service of process), Davis Graber & Ward (accountants), Guy

13

Ferreboeuf (legal), First American Title (indemnification obligations)[5], Guy Lesourd (S.C.P. – Avocat) (legal), Jenkins & Huntington (elevator consultant), Mina Sarwary (legal) and Morvillo Abromowitz (legal). Creditors who have a claim against EALC by virtue of it being a principal for its attorney agents are Counsel Press, LLC, Crowe Foreign Services, Green House Reporting, Inc. and TransPerfect Document Management. None of these creditors were paid with property of the estate. Although creditors such as Crowe Foreign Services are looking to hold EALC's attorney agent responsible for the unpaid bill, that in no way diminishes EALC's liability as principal.

CDR's objection to the claim of Atlantic Bank is nonsense unworthy of reply, except to say EALC and Atlantic Bank entered into a transaction whereby EALC borrowed from Atlantic Bank. The bank holds a valid mortgage on the Flatotel Property, and it is a valid EALC creditor. Stated simply Atlantic Bank gave fair consideration for its security interest – namely the proceeds of the loan, and it is entitled to its creditor status. As CDR is fully aware, the loan proceeds were used to satisfy EALC debts, real estate taxes for the Flatotel Property, required title insurance, refinancing of a prior loan taken by Macson and used for building construction (which EALC was required to repay under the Franchise Agreement), and further building renovations.

CDR's assertion that Atlantic Bank is not qualified to be counted as a creditor since it received, as part of its collateral, a security interest which CDR alleges itself was fraudulently transferred by EALC to MegaInvest is an assertion unworthy of a first year law student.

---

[5]     As part of the mortgage loan transaction with Atlantic Bank, EALC was required to indemnify the title insurance company, First American Title, for its expenses incurred in connection with defending title.

14

## B. THIS CASE SHOULD BE DISMISSED AS A BAD FAITH FILING AS THE PRODUCT OF A TWO-PARTY DISPUTE

This case should also be dismissed and the Court should abstain under section 305 since it is a two-party dispute between EALC and CDR and CDR filed the involuntary petition in bad faith.

Bad faith in the filing of an involuntary petition has been defined in various ways by courts. *See e.g. Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992) (a disregard of bankruptcy law and procedure constitutes bad faith); *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 620 (9th Cir. B.A.P. 1986) (bad faith is a fact question to be measured against an objective test of what a reasonable person would have done); *In re Dino's Inc.*, 183 B.R. 779, 783 (S.D. Ohio 1995) (reckless disregard of facts constitutes bad faith); *In re Advanced Press & Litho., Inc.*, 46 B.R. 700, 703 (D. Col. 1984). According to a leading treatise, bad faith can be found if the "involuntary petition is found to be ill-advised." 2 *Collier on Bankruptcy* ¶ 303.12 (15th ed. 1979).

In determining whether the facts and circumstances of a case warrant a finding of bad faith, courts have focused on the petitioning creditor's purpose in filing the petition. For instance, where a petitioning creditor is attempting to obtain a disproportionate advantage over the debtor and/or other creditors rather than protecting the general interests of creditors as a whole, bad faith has been found. *In re K.P. Enterprises*, 135 B.R. 174 (Bankr. D. Me. 1992). In considering whether bad faith exists, a court can look to see if a petitioning creditor acted in a reasonable fashion or in reckless disregard of the truth or falsity of information. *In re Dino's supra* at 783. Bad faith has also been found where the involuntary petition is the product of a two-party dispute. *In re Oakley Custom Homes, Inc.*, 168 B.R. 232, 239 (Bankr. D. Col. 1994).

This case is a textbook example of a bad faith filing. CDR, a French corporation owned by the French government, filed the involuntary petition in violation of a stay issued by the Commercial Court of Antibes, France. A translated copy of the Antibes stay is annexed hereto as **Exhibit "E"**. Indeed, at a hearing before the New York State Supreme Court on June 9, 2005, CDR's counsel affirmatively acknowledged that it could not file an involuntary petition stating:

> Judge, we do not have an option of going into Bankruptcy Court at this time, and I will say that for the record. CDR does not have an ability to force EALC into bankruptcy, notwithstanding the fact it is insolvent and is unable to meet its obligations.

(June 9, 2005 transcript of hearing before Justice Debra James, pg 57, lines 12 – 16 attached hereto as **Exhibit "F"**

Not only did CDR violate its own court's stay by filing the involuntary petition, it also violated a stay issued by the NYSC-AD (the "Appellate Division Stay"). A copy of the Appellate Division Stay is annexed hereto as **Exhibit "G"**. CDR violated the Appellate Division Stay despite the fact that it was receiving $1.5 million per month from Macson (for a total of $9 million) in accordance with the terms of the stay. This Court has already recognized that the disputes between CDR and EALC should be heard by the NYSC-AD and, if necessary, the New York State Supreme Court or the Court of Appeals. Accordingly, there is little need for this two-party dispute to remain before this Court. CDR has more than adequate remedies in the state court system.

Bankruptcy courts have had little difficulty dismissing involuntary bankruptcy cases predicated on two-party disputes where the parties have adequate remedies in non-bankruptcy forums. *See In Remex Electronics Ltd. V. Axl Industries, Inc. (In re Axl Industries, Inc.)*, 127 B.R. 482, 484 (S.D. Fla. 1991) (bankruptcy courts "should not take jurisdiction over a two-party dispute, unless special circumstances exist."); *In re Nar Jor Enterprises Corp.*, 6 B.R. 584

16

(Bankr. S.D. Fla. 1980); *Westerleigh Development Corp.*, 141 B.R. 38 (Bankr. S.D.N.Y. 1992);

*In re Kass*, 114 B.R. 308 (Bankr. S.D. Fla. 1990) (petition dismissed as petitioning creditors

were attempting to use bankruptcy court as an alternative to litigation to resolve two-party

dispute and adequate state law remedies existed); *In re Castle Mall, Inc.*, 127 B.R. 336 (Bankr.

D. Del. 1991); *In re Win-Sum Sports, Inc.*, 14 B.R. 389 (Bankr. D. Conn. 1981); *In re Investment

Corp. of North America*, 39 B.R. 758 (Bankr. S.D. Fla. 1984).

Dismissal is also warranted under section 305 of the Bankruptcy Code which authorizes

suspension or dismissal of the bankruptcy proceedings "if the interests of creditors and the debtor

would be better served by such dismissal or suspension" 11 U.S.C. § 305(a)(1). In determining

whether dismissal under section 305 is warranted, courts have looked at various factors

including:

> (1) economy and efficiency of administration;
>
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
>
> (3) whether federal proceedings are necessary to reach a just and equitable solution;
>
> (4) whether there is an alternative means of achieving an equitable distribution of assets;
>
> (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
>
> (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
>
> (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002).

In this case, nearly all of the foregoing factors points decisively in the direction of

abstention. First, there are already actions between CDR and EALC pending in the state courts

17

for which the automatic stay has already been lifted. Economy and efficiency of administration would, therefore, best be served in the continuation of the state court actions. Since there are pending actions in the state court, the second factor is also satisfied. Third, there is no reason why federal proceedings are necessary to reach a just and equitable solution. The parties have thorough and adequate remedies in state court. Fourth, CDR is the only creditor of a non-recurring type. If this case is dismissed and the Extension Order issues as to CDR perhaps EALC may reach a settlement of all disputes with the Summersun trustee.

## CONCLUSION

For all of the foregoing reasons, this involuntary proceeding should be dismissed.

DATED:      New York, New York
            September 25, 2006

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**

By: */s/ Joshua J. Angel*
     Joshua J. Angel, Esq. (JA-3288)
     Neil Y. Siegel, Esq. (NS-3216)
     Frederick E. Schmidt, Esq. (FS-5277)
460 Park Avenue
New York, New York
(212) 752-8000
(212) 752-8393 (facsimile)

Attorneys for the Alleged Debtor, Euro-American Lodging Corporation

18