**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
460 Park Avenue
New York, NY  10022-1906
(212) 742-8000
(212) 752-8393 Facsimile
Joshua J. Angel, Esq. (JA-3288)
Neil Y. Siegel, Esq. (NS-3216)
Frederick E. Schmidt, Esq. (FS-5277)

Attorneys for Attorneys for Alleged Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EURO-AMERICAN LODGING<br>CORPORATION,<br><br>           Alleged Debtor. | Case No. 06-11325 (SMB)<br><br>Chapter 7 (Involuntary) |

**EURO-AMERICAN LODGING CORPORATION'S POST-TRIAL BRIEF**
**SUBMITTED IN OPPOSITION TO ENTRY OF AN ORDER FOR RELIEF**
**IN INVOLUNTARY CHAPTER 7 PROCEEDINGS FILED AGAINST IT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 2

      I.      THIS CASE MUST BE DISMISSED AS IT WAS FILED BY A SINGLE PETITIONING CREDITOR AND EALC HAD 107 ELIGIBLE CREDITORS AS OF THE PETITION DATE. .................................................... 2

            A.      The Receiver, His Attorneys and His Creditors Are All Qualified Pre-Petition Creditors Under 11 U.S.C. § 303(b) and New York State Law. ................................................................................................. 5

            B.      Each Member of the Receiver Creditor Group Also Holds a Claim Under Applicable Bankruptcy Law .......................................................... 9

      II.     THIS CASE SHOULD BE DISMISSED AS A BAD FAITH FILING AS THE PRODUCT OF A TWO-PARTY DISPUTE ............................................. 22

CONCLUSION ....................................................................................................................... 25

43344/0002-3103074v2

# TABLE OF AUTHORITIES

| CASES | PAGES |
|---|---|

*In re 245 Associates, LLC*, 188 B.R. 743 (Bankr. S.D.N.Y. 1995)..........................................9, 10

*In re 400 Madison Avenue Partnership*, 213 B.R. 888 (Bankr. S.D.N.Y. 1997) ...............9, 10, 11

*In re Advanced Press & Litho., Inc.*, 46 B.R. 700 (D. Col. 1984)................................................22

*In re Arriola Energy Corp.*, 74 B.R. 784 (S.D. Tex. 1987) and *In re* ............................................9

*In re Atlas Iron Const. Co.*, 19 A.D. 415 (A.D. 1st Dept. 1897)....................................................5

*In re B & B Vehicle Sales, Inc.*, 194 B.R. 663 (Bankr. S.D. Ala. 1996) .....................................12

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2001 U.S. Dist. LEXIS 4233 (S.D.N.Y. 2001)...............................................................................................................15

*In re Bean*, 252 F.3d 113 (2d Cir. 2001) ..............................................................................12, 13

*In re Braten*, 99 B.R. 579 (Bankr. S.D.N.Y. 1989)................................................................4, 17

*Britain Equities, L.L.C. v. Allen -Main Associates L.P. (In re Allen-Main Assocs L.P.)*, 223 B.R. 59 (BAP 2d Cir. 1998) .........................................................................7

*Bufford v. Bradshaw*, 20 Misc. 2d 53, 191 N.Y.S.2d 737 (Sup. Ct. Bronx 1959)........................6

*In re Castle Mall, Inc.*, 127 B.R. 336 (Bankr. D. Del. 1991) .......................................................24

*In re Cohn-Phillips, Ltd.*, 193 B.R. 757 (Bankr. E.D. Va. 1996) ...................................................4

*In re Cold Harbor Associates LP*, 204 B.R. 904 (Bankr. E.D. Va. 1997).....................................9

*Copeland v. Salomon*, 56 N.Y.2d 222, 436 N.E.2d 1284 (N.Y. 1982) .........................................5

*Corn Exchange Bank Trust Co. v. Bankers Trust Co.*, 268 N.Y. 224 (N.Y. 1935) ......................5

*Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) .............................11

*In re Dilley*, 339 B.R. 1 (1st Cir. BAP 2006) ..............................................................................18

*In re Dino's Inc.*, 183 B.R. 779 (S.D. Ohio 1995)......................................................................22

*In re East-West Associates*, 106 B.R. 767 (S.D.N.Y. 1989)....................................................6, 7

ii

In re Eastown Co., 215 B.R. 960 (B.A.P. 6th Cir. 1998)............................................................4

In re Faberge Restaurant of Florida, Inc., 222 B.R. 385 (Bankr. S.D. Fla. 1997)......................17

First New York Bank for Business v. 155 E. 34 Realty Co., 158 Misc. 2d 658, 601
    N.Y.S.2d 990 (Sup. Ct. N.Y. 1993) ..............................................................................6

In re Garland Coal & Mining Co., 67 B.R. 514 (Bankr. W.D. Ark. 1986)............................4, 12

In re Global Waste Co., 207 B.R. 542 (Bankr. N.D. Ohio 1997)..........................................4, 17

In re Heilbron, Wolff & Co., 224 A.D. 14, 229 N.Y.S. 325 (A.D. 1st Dept. 1928)....................14

In re Hentges, --- B.R. ---, 2006 WL 2766060 (Bankr. N.D. Okla.) ........................................17

In re Investment Corp. of North America, 39 B.R. 758 (Bankr. S.D. Fla. 1984) ........................24

Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.), 61 B.R. 614 (9th Cir. B.A.P.
    1986)..............................................................................................................................22

Johnson v. Homestate Bank, 501 U.S. 78, 111 S. Ct. 2150 (1991)................................................4

In re K.P. Enterprises, 135 B.R. 174 (Bankr. D. Me. 1992) ......................................................22

In re Kass, 114 B.R. 308 (Bankr. S.D. Fla. 1990) ......................................................................24

Keller v. United States, 58 F.3d 1194 (7th Cir. 1995) ................................................................15

In re Kenval Marketing Corp., 84 B.R. 32 (Bankr. E.D. Pa. 1988)...............................................9

Key Mechanical, Inc. v. BDC 56 LLC (In re BDC 56 LLC, 330 F.3d 111 (2d Cir.
    2003)..................................................................................................................3, 8, 16
                                                                                                                                17

Knickerbocker Ice Co. v. Benson, 155 Misc. 738, 279 N.Y.S. 86 (Mun. Ct. N.Y.
    1935)................................................................................................................................6

Landon v. Hunt, 977 F.2d 829 (3d Cir. 1992)............................................................................22

In re MarketXT Holdings Corp., 347 B.R. 156 (Bankr. S.D.N.Y. 2006).....................................18

In re Mayhew, 194 B.R. 6 (Bankr. D. RI 1996)..........................................................................12

In re Nar Jor Enterprises Corp., 6 B.R. 584 (Bankr. S.D. Fla. 1980) .........................................23

43344/0002-3103074v2

In re Norris, 183 B.R. 437 (W.D. La. 1995) .............................................................. 4

In re Oakley Custom Homes, Inc., 168 B.R. 232 (Bankr. D. Col. 1994) ..................................... 23

In re Onyx Telecommunications, Ltd., 60 B.R. 492 (Bankr. S.D.N.Y. 1985) ............................. 18

In re Paper I Partners, L.P., 283 B.R. 661 (Bankr. S.D.N.Y. 2002) ............................................ 24

Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992) ........................ 11

Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 110 S. Ct.
    2126, 109 L. Ed. 2d 588 (1990) ...................................................................................... 11

Petralex Stainless, Ltd v. Bishop Tube Division of Christiana Metals (In re Petralex
    Stainless, Ltd.), 78 B.R. 738 (Bankr. E.D. Pa. 1987) ................................................. 18, 19

Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,
    507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) ................................................. 11

In re Posadas Associates, 127 B.R. 278 (Bankr. D. N.M. 1991) ..................................................... 9

In re R.A. Security Holdings, 46 F. Supp. 254 (E.D.N.Y. 1942) aff'd 134 F.2d 164
    (2d Cir. 1943) .................................................................................................................... 7

In re Reid, 773 F.2d 945 (7th Cir. 1985) ..................................................................................... 18

Remex Electronics Ltd. V. Axl Industries, Inc. (In re Axl Industries, Inc.), 127 B.R.
    482 (S.D. Fla. 1991) ........................................................................................................ 23

In re Rothery, 143 F.3d 546 (9th Cir. 1998) ................................................................................. 4

Rutos Aereoz Nacionales, S.A. v. United States, 373 F.2d 213 (5th Cir. 1967) ......................... 14

In re CLE Corp., 59 B.R. 579 (Bankr. N.D. Ga. 1986) ............................................................... 19

In re Sevitski, 161 B.R. 847 (Bankr. N.D. Okla. 1993) ................................................................ 9

In re Sundown Assocs., 150 B.R. 156 (Bankr. E.D. Va. 1992) ...................................................... 7

The Prince Group, Inc. v. MTS Products, 1998 U.S. Dist. LEXIS 7835 (S.D.N.Y.
    1998) ................................................................................................................................ 15

U.S. v. Mazzeo, 306 F. Supp. 2d 294 (E.D.N.Y. 2004) ............................................................... 21

In re Wells Properties, Inc., 102 B.R. 685 (Bankr. N.D. Ill. 1987) .............................................. 6

Westerleigh Development Corp., 141 B.R. 38 (Bankr. S.D.N.Y. 1992) ..................................... 24

In re Win-Sum Sports, Inc., 14 B.R. 389 (Bankr. D. Conn. 1981) ............................................... 24

**STATUTES**

11 U.S.C. § 101(5)(A) and (B) ....................................................................................... 3, 6, 10

11 U.S.C. § 303(b) ........................................................................................................ 1, 2, 3, 4, 5
6, 7, 8, 9,
12, 13, 16, 17,
18, 19, 20, 21

11 U.S.C. § 305(a)(1) ............................................................................................................. 24

11 U.S.C. §§ 503(b)(3)(E), 503(b)(4) and 543(c)(2) ................................................................ 10

11 U.S.C. § 543(c)(1) ............................................................................................................. 10

11 U.S.C. § 543(c)(2) ............................................................................................................. 10

11 U.S.C. § 549 ................................................................................................................ 11, 12

**MISCELLANEOUS**

2 *Collier on Bankruptcy* ¶ 303.12 (15th ed. 1979) .................................................................. 22

43344/0002-3103074v2

## PRELIMINARY STATEMENT

The trial seeking dismissal of the involuntary chapter 7 petition against Euro-American Lodging Corporation ("EALC" or the "Alleged Debtor") took place on September 27, 2006 and September 29, 2006 (the "Trial"). The Trial has been continued to November 17, 2006 when it is expected to conclude. Heretofore, EALC submitted a trial brief dated September 25, 2006 (the "Trial Brief"), and a supplemental trial brief (the "Supplemental Trial Brief") dated September 29, 2006. EALC continues to rely on the arguments set forth in both the Trial Brief and Supplemental Trial Brief. This post-trial brief (the "Post-Trial Brief") is submitted in accordance with the Court's direction that EALC submit its proposed findings of fact and a post-trial brief by October 30, 2006.

It is the Alleged Debtor's position that the involuntary chapter 7 case must either be dismissed as a matter of law, or that it should be dismissed, alternatively, as either a bad faith filing, or in the best interest of the Alleged Debtor and its creditors. The Trial evidenced that EALC on the Petition Date had 107 qualified creditors under 11 U.S.C. § 303(b).[1] No EALC creditors have joined CDR[2] (the sole petitioning creditor) in support of its petition, and accordingly, the case must be dismissed.

CDR has consented in France, and in the United States, to be bound by the orders of a French Court to be enforced in the United States by an order of extension (the "Extension Order"), in the chapter 15 case pending before this Court entitled *In re S.N.C. Summersun et cie* (case number 06-10955 ("Summersun"). It is the Alleged Debtor's further position that CDR's

---

[1] Hereinafter "§ 303(b)" or "Section 303(b)."

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Trial Brief and Supplemental Brief.

43344/0002-3103074v2

agreement to be so bound triggered the automatic stay provisions of § 362. Logically, CDR having consented to accept the Summersun trustee's assertions that EALC's assets belong to the Summersun estate is enjoined from independently being able to continue any actions with regard to its claims against EALC, and EALC's property.

Three key disputed actions are presently *sub-judice* before the New York Supreme Court, Appellate Division ("NYSC-AD"). The disputed actions deal with critical elements of CDR's alleged claims. The disputed actions include, *inter alia*, the bona fides of a mortgage which is the keystone of CDR's claim to being a first secured, under secured creditor of EALC. This Court recognized the utility of having the matter which are *sub-judice* before the NYSC-AD continue in the state court, before precipitously dealing with the involuntary. Accordingly, this Court, on August 2, 2006, entered an order partially lifting the automatic stay so to allow the three appeals to continue. At the very least, this case is premature, and does not belong in the Bankruptcy Court at least until the NYSC-AD rules on the matters before it. It is respectfully submitted that this Court should either defer deciding this case until the NYSC-AD rules, or it should order its dismissal pursuant to § 305(a).

<u>**STATEMENT OF FACTS**</u>

The relevant facts to this case are set forth on the accompanying Proposed Findings of Fact.

<u>**ARGUMENT**</u>

I.      **THIS CASE MUST BE DISMISSED AS IT WAS FILED BY
        A SINGLE PETITIONING CREDITOR AND EALC HAD
        107 ELIGIBLE CREDITORS AS OF THE PETITION DATE.**

This case must be dismissed since EALC had 107 creditors as of the Petition Date and only one petitioning creditor, to wit, CDR. Section 303(b) requires the existence of three

2

petitioning creditors if the alleged debtor has twelve or more creditors in order to invoke the jurisdiction of the bankruptcy court. The statute provides:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $12,300 of such claims.

11 U.S.C. § 303(b). The requirements of Section 303(b) are subject matter jurisdictional. *Key Mechanical, Inc. v. BDC 56 LLC (In re BDC 56 LLC*, 330 F.3d 111, 118 (2d Cir. 2003).

The determination of whether one or three petitioning creditors are required hinges on how many holders of qualifying "claims" exist. The Bankruptcy Code defines a "claim" as a:

> (A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A) and (B).

By the foregoing language, Congress intended for the broadest possible definition of the term "claim" to apply. *Johnson v. Homestate Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154 (1991).

The debtor has the initial burden to prove the existence of 12 or more creditors. *See In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998). EALC met that burden when it filed a verified list of creditors on August 7, 2006 in compliance with Rule 1003(b). After the verified creditor list was filed, the burden shifted to CDR to establish that such creditors were not qualified under Section 303(b). *In re Eastown Co.*, 215 B.R. 960, 965 (B.A.P. 6th Cir. 1998); *In re Global Waste Co.*, 207 B.R. 542, 544 (Bankr. N.D. Ohio 1997); *In re Braten*, 99 B.R. 579, 583 (Bankr. S.D.N.Y. 1989). The Petition Date is the operative date in determining whether holders of twelve or more claims exist in this case (*i.e.*, June 12, 2006). *In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr. E.D. Va. 1996); *In re Norris*, 183 B.R. 437, 450 (W.D. La. 1995); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 519 (Bankr. W.D. Ark. 1986).

A chart categorizing EALC's claims is set forth on pages 3 through 5 of the Trial Brief. For the sake of brevity, it is not reproduced herein. The categories are: (1) "Receiver" (hereinafter the "Receiver Creditor Group"); (2) "CDR"; and (3) "General" (hereinafter the "General Creditor Group"). CDR does not dispute that Bryan Cave and itself are qualified creditors which must be counted. In order to meet its burden, CDR must disprove the qualifications of each of the remaining 105 listed creditors. For the reasons that follow, CDR has failed to meet its burden and the involuntary case must be dismissed.

**Receiver Creditor Group**

The Receiver Creditor Group includes (1) the claims of approximately 90 recurring hotel vendors who provided day-to-day goods and services to whom the Receiver was indebted as of

the Petition Date; (2) the Receiver's claim for compensation, which, as of the Petition Date, was $501,646.55; and (3) the claim of the Receiver's counsel for unpaid legal fees in the amount of $73,073.00. CDR has admitted (indeed argued) that each of the "hotel vendors" are creditors of the Receiver. CDR has not alleged that any of the Receiver's creditors' claims are the subject of a bona fide dispute with the Receiver as to liability or amount. Rather, CDR argues, wrongly, that these claims are not qualified claims against EALC under Section 303(b) and may not be counted.

### A.  The Receiver, His Attorneys and His Creditors Are All Qualified Pre-Petition Creditors Under 11 U.S.C. § 303(b) and New York State Law.

Each of the members of the Receiver Creditor Group held qualified claims under New York State Law on the Petition Date. CDR has not met its burden of disqualifying any of these claims under Section 303(b). CDR's failure to do so is fatal to its attempt to invoke this Court's jurisdiction over this two-party dispute. CDR has acknowledged at trial and in its briefs that the Receivership consists solely of EALC's property; that prior to the Petition Date, all of the Receivership's creditors, including the fees of the Receiver and professionals retained by the Receiver, were payable out of the Receivership fund; and that title to all of the property contained in the Receivership fund at all times remained with EALC. CDR also admits, and the evidence adduced at the Trial confirms, that each member of the Receiver Creditor Group held a pre-petition claim against the Receivership. Accordingly, at the very least, each member of the Receiver Creditor Group held a claim against EALC's property in the Receivership immediately prior to the filing of the Petition. *See Corn Exchange Bank Trust Co. v. Bankers Trust Co.*, 268 N.Y. 224, 227 (N.Y. 1935); *Copeland v. Salomon*, 56 N.Y.2d 222, 232, 436 N.E.2d 1284, 1290-91 (N.Y. 1982); *In re Atlas Iron Const. Co.*, 19 A.D. 415, 469 (A.D. 1st Dept. 1897); *First New*

*York Bank for Business v. 155 E. 34 Realty Co.*, 158 Misc.2d 658, 661, 601 N.Y.S.2d 990, 992 (Sup. Ct. N.Y. 1993); *Bufford v. Bradshaw*, 20 Misc.2d 53, 54, 191 N.Y.S.2d 737, 738-39 (Sup. Ct. Bronx 1959); *Knickerbocker Ice Co. v. Benson*, 155 Misc. 738, 741, 279 N.Y.S. 86, 89 (Mun. Ct. N.Y. 1935).

Section 303(b) provides that an involuntary case is commenced against a "person" and in order to qualify for counting purposes, an entity must be a holder of a claim against "such person." *11 U.S.C. § 303(b)(1)*. Section § 101(13) of the Bankruptcy Code provides that a debtor is a "person" concerning which a case under title 11 has been commenced. *11 U.S.C. § 101(13)*. EALC is, therefore, the "person" against which this involuntary petition was commenced. In order to be a qualified creditor under Section 303(b), each member of the Receiver Creditor Group must hold a claim against EALC as of the Petition Date. Section 102(2) is entitled "*Rules of Construction*." In plain language, it provides that a "'<u>claim against the debtor' includes claim against property of the debtor.</u>" *See In re East-West Associates*, 106 B.R. 767, 771 (S.D.N.Y. 1989) ("Since, under the Bankruptcy Code, a claim against the debtor includes a claim against the property of the debtor, 11 U.S.C. § 102(2), it seems that the Petitioning Creditors are eligible under Section 303(b)"); *In re Wells Properties, Inc.*, 102 B.R. 685, 693 (Bankr. N.D. Ill. 1987). Under this rule of construction, otherwise qualified creditors holding non-recourse claims against property of an alleged debtor are qualified under Section 303(b) to be petitioning creditors. It is inescapable, therefore, that each member of the Receiver Creditor Group held a state law claim qualified for counting purposes under 11 U.S.C. § 303(b).

In a desperate attempt to circumvent applicable law, and the plain meaning of § 102(2), CDR asserts, <u>without legal support</u>, that Section 102(2) is inapplicable in this instance, and that the Receiver Creditor Group's claims against EALC's property are not sufficient to qualify them

under Section 303(b). This Court opined during the Trial that the Receiver Creditor Group's claims against EALC's property in Receivership are akin to a non-recourse creditor's claim against an alleged debtor's property.[3] Cases have long held that creditors holding claims against an alleged debtor's property alone have standing to be petitioning creditors in involuntary bankruptcy cases. *See In re R.A. Security Holdings*, 46 F.Supp. 254, 255-56 (E.D.N.Y. 1942) (creditors need not hold *in personam* claims as claims against an alleged debtor's property are sufficient to confer petitioning creditor standing under the Bankruptcy Act) *aff'd* 134 F.2d 164 (2d Cir. 1943); *In re Sundown Assocs.*, 150 B.R. 156, 159 (Bankr. E.D. Va. 1992) (creditor holding non-recourse claim against an alleged debtor's property was qualified to be a petitioning creditor under Section 303(b)); *Carteret Savings Bank, F.A. v. Nastasi-White, Inc. (In re East-West Associates)*, 106 B.R. 767, 771 (petitioning creditors holding non-recourse mechanics' liens found, as a matter of law, to be qualified under Section 303(b) to file an involuntary petition). CDR has failed to address the rule of law emanating from the foregoing cases, and its failure is fatal to its argument that Receiver Creditor Group Members are not qualified under Section 303(b) to be petitioning creditors.

The only support CDR offers for its argument that Creditors holding non-recourse claims are unqualified under Section 303(b) is its patent misstatement of the holding of *CC Britain Equities, L.L.C. v. Allen –Main Associates L.P. (In re Allen-Main Assocs L.P.)*, 223 B.R. 59

---

[3] CDR attempts to distinguish non-recourse claims from claims against EALC's property held by the Receiver arguing that title to EALC's property remained with EALC. CDR further argues that pre-petition creditors of the Receiver only have claims against the Receivership property. These assertions do not provide either logical or legal support which would allow this Court to accept CDR's conclusion that the Receiver creditor Group's claims are dissimilar to other types of non-recourse claims. Rather, CDR's contentions in this regard actually support the view that the claims are similar in nature.

43344/0002-3103074v2

(BAP 2d Cir. 1998). Specifically, CDR citing only *Allen-Main*, argues that "[t]he law is clear that a holder of a claim against property alone cannot be a petitioning creditor in an involuntary Chapter 7 Case," (*CDR Post-Trial Memorandum* at ¶ 52). The *Allen-Main* Court, however, made no such finding. Indeed, the court did not quibble with the fact that Sections 102(2) and 303(b) allow for creditors with non-recourse claims to be petitioning creditors in an involuntary bankruptcy. *Id* at 62. What the *Allen-Main* Court did find was that a creditor holding a non-recourse claim cannot be the *only* petitioning creditor since it does not possess the requisite unsecured claim in at least the statutory amount. *Id* at 63. There is nothing in *Allen-Main* which would prevent creditors with non-recourse claims from becoming petitioning creditors so long as their claims are combined with unsecured claims aggregating at least $12,300. The Second Circuit in *In re BDC 56 LLC,* 330 F.3d at 122 has also recognized the ability of non-recourse claimholders to be petitioning creditors. Although the *BDC* Court ultimately disqualified the petitioning creditors' mechanic's lien claim based on the finding of an actual bona fide factual dispute, it implicitly recognized that the non-recourse creditor was otherwise qualified to be a petitioning creditor. *Id* at 122.[4]

CDR argues further that Section 102(2) somehow <u>creates</u> creditors upon the filing of a petition (*CDR post-trial brief* at 46) and that such non-recourse creditors are unqualified under Section 303(b). In its argument, CDR fails to recognize that Section 102(2) does not create substantive rights by itself, but rather serves as a rule of construction for the entire Bankruptcy Code, including Section 303(b). Section 102(2) mandates how this Court should interpret

---

[4] Holders of non-recourse mechanic's liens are not, however, permitted to *join* an involuntary petition under Section 303(c) since they do not hold unsecured claims. *Id* at 122.

43344/0002-3103074v2

Section 303(b) - i.e. that holders of claims against property are qualified to be petitioning creditors in an involuntary case, and so qualify as eligible Section 303(b) creditors of EALC.

Citing *In re Arriola Energy Corp.*, 74 B.R. 784 (S.D. Tex. 1987) and *In re Cold Harbor Associates LP*, 204 B.R. 904 (Bankr. E.D. Va. 1997), CDR next argues that the EALC claimants do not have valid claims since invoices were sent to other parties. Once again, that argument must fail because it ignores the legal reality of the Receiver Creditor Group's claims against EALC's property, as well as their claims against EALC as the undisclosed principal of its agent, Macson, and, by extension, the Receiver. As discussed above, Receiver Creditor Group Members' claims against EALC's property in Receivership qualify such entities to become petitioning creditors and to be counted under Section 303(b). Neither a receivership nor any other non-recourse claim against property of the alleged debtor was present in the facts of either *Arriola* or *Cold Spring Harbor*, and neither case is analogous to the facts present here.

**B.**     **Each Member of the Receiver Creditor Group Also Holds a Claim Under Applicable Bankruptcy Law.**

In addition to the state law claims held by the members of the Receiver Creditor Group, the claimants also enjoy pre-petition creditor status under applicable bankruptcy law. Each of these claims existed immediately prior to the filing of an involuntary petition at which point they instantly ripened. Upon the filing of a petition, a *custodian* has a claim against the estate for his compensation, costs and expenses; a custodian's attorneys and accountants have claims for their fees and expenses; and the entities to which the custodian has become indebted have claims against the estate for such indebtedness. *See In re 400 Madison Avenue Partnership*, 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997); *In re 245 Associates, LLC*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995); ); *In re Sevitski*, 161 B.R. 847, 854 (Bankr. N.D. Okla. 1993); *In re Posadas Associates*, 127 B.R. 278, 280 (Bankr. D. N.M. 1991); *In re Kenval Marketing Corp.*, 84 B.R.

32, 34 (Bankr. E.D. Pa. 1988). State court receivers are "custodians" under 11 U.S.C. § 101(11). *In re 245 Associates, LLC* 188 B.R. at 748.

This Court, in *In re 245 Associates, LLC,* found that custodians are entitled to administrative expense claim status under 11 U.S.C. § 503(b)(3)(E) for pre-petition fees and expenses. It further found that custodians are entitled to payment under 11 U.S.C. § 543(c)(2) for post-petition fees and expenses incurred in the turnover process. *Id* at 748, and that a custodian's attorneys and accountants are entitled to administrative expense claims pursuant to 503(b)(4) for their prepetition fees and expenses. *Id* at 748. Accordingly, the Receiver and his attorneys hold claims against the estate pursuant to 11 U.S.C. §§ 503(b)(3)(E), 503(b)(4) and 543(c)(2).

The Receiver's creditors also hold claims against the estate pursuant to § 543(c)(1). Section 543(c)(1) requires the Court to "protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property." *11 U.S.C. § 543(c)(1).* The meaning of this section is so clear that there is a dearth of case law discussing its interpretation and application. That sentiment was clearly expressed in the only reported case to discuss this section, to wit, *In re 400 Madison Avenue Partnership*, 213 B.R. 888. In that case, Judge Beatty, keenly aware that interpretation of the Section did not require a "Rosetta Stone", described its meaning as follows:

> When turnover occurs, the Bankruptcy Court is required to protect the persons to whom the custodian is indebted. *See Code § 543(c)(1).* It cannot be disputed therefore that, if the Receiver had turned the Property over to the Debtor, the Court would be required to provide for the payment of all of the Receiver's unpaid bills, including those of his counsel, subject only to a determination of reasonableness.

In re 400 Madison Avenue Partnership 213 B.R. at 898.

Unlike Section 543(c)(2), Section 543(c)(1) does not apply only to a receiver's creditors during the post-petition winding up phase. *In re 400 Madison Avenue Partnership*, 213 B.R. at 898. Post-petition winding up expenses of the receiver are already expressly provided for in Section 543(c)(2). Accordingly, to interpret Section 543(c)(1) as applying to post-petition creditors of the receiver would render it superfluous. "When interpreting the Bankruptcy Code, careful attention should be paid to the actual statutory language." *In re 400 Madison Avenue Partnership*, 213 B.R at 893 *citing United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992*); Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

CDR argues that Section 543(c)(1) does not require the Court to grant a custodian's creditors a claim if they do not need "protection." Since each member of the Receiver Creditor Group was paid by the Receiver post-petition, the argument goes, these creditors did not require protection and, therefore, did not hold claims against the estate. This argument is wholly without merit. The question is not whether these creditors held claims days after the Petition Date but rather whether they held claims on the Petition Date. Further, Section 543(c)(1) is mandatory. It is not permissive. The section provides that the court "shall" protect the custodian's creditors, not that it "may" protect such entities if they need it. Lastly, EALC respectfully submits that the only way in which the Court can protect a custodian's creditors is by recognizing such claims as bona fide pre-petition claims against the estate of the Alleged Debtor.

43344/0002-3103074v2

## None of EALC's Creditors Are Disqualified As a Recipient of a Transfer Under 11 U.S.C. § 549

The Receiver, with the consent of the Alleged Debtor and without objection of CDR, has not commenced the winding-up process under Section 543(a) and (b). Such turnover has not commenced since once this case is dismissed, the Flatotel Property will end up re-vested in Receivership. Since the Petition Date, the Receiver has continued to pay the day-to-day bills of the hotel vendors. While, at first blush, this may appear to subject these entities to liability for unauthorized post-petition transfers under 11 U.S.C. § 549, such is not the case. Section 303(b) disqualifies any creditor who is the recipient of a transfer that is voidable under, *inter alia*, Section 549 of the Bankruptcy Code. *See. e.g., In re Mayhew*, 194 B.R. 6 (Bankr. D. RI 1996); *In re B & B Vehicle Sales, Inc.*, 194 B.R. 663, 667 (Bankr. S.D. Ala. 1996); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 519 (Bankr. W.D. Ark. 1986). No member of the Receiver Creditor Group has any liability under Section 549, since no claims were paid with property of the estate.[5]

Section 549 provides as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

---

[5] Indeed, CDR concedes that fourteen listed creditors did not receive avoidable post-petition transfers even under its view of the law.

Section 549 requires that the transfer be of *property of the estate*. *In re Bean*, 252 F.3d 113, 117 (2d Cir. 2001). As a matter of law, none of the funds the Receiver used to pay the members of the Receiver Creditor Group constituted property of the estate. Section 541(a)(3) includes, as property of the estate, "[a]ny interest in property that the trustee recovers under Section 329(b), 363(n), 543, 550, 553, or 723 of this title. *11 U.S.C. § 541(a)(3)*. In *In re Colonial Realty Co.*, 980 F.2d 125, 130-31 (2d Cir. 1992), the Second Circuit held that fraudulently transferred property does not constitute property of the estate unless and until it is recovered under Section 550. The Court reasoned that Section 541(a)(3) would be rendered meaningless if such property were included as property of the estate before its recovery by the trustee. *Id* at 131. The same reasoning applies here where the funds held by the Receiver post-petition were never recovered under Section 543. Contrary to the unsupported argument of CDR, *title* to the property in question has no bearing on whether it is property of the estate under Section 541.[6] Since EALC's property was never recovered by the trustee, the funds used to pay the claims of the Receiver Creditor Group never became property of the estate. Accordingly, the

_____

[6] CDR argues, without any textual or legal support, that Section 541(a)(3)'s application is limited to instances where *title* to a debtor's property passed pre-petition. Section 541(a)(3), however, expressly references property recovered from a custodian under Section 543 and does not limit its applicability to instances where a custodian has actually received title to a debtor's property. Indeed, the term "custodian", defined in Section 101(11), encompasses a "receiver or trustee of any of the property of the debtor … [an] assignee under a general assignment for the benefit of the debtor's creditors; or [a] trustee, receiver, or agent … that is appointed or authorized to take charge of property of the debtor." Of these three types of entities which may be a custodian, only an assignee would actually take title to a debtor's property. Accordingly, it is clear from the language employed by Section 541(a)(3) that it applies in instances where a receiver has not taken title of the debtor's property. It is also interesting to note that if CDR's argument that a "person" under Section 303(b) is not a "debtor" until a case is actually commenced were correct, a custodian could never exist. Section 101(11) defines a "custodian" as an entity which has possession of property of a "debtor", not property of a "person." This is so although the Code clearly assumes that a custodian took possession of the property prior to the commencement of a bankruptcy case.

payments made by the Receiver may not be avoided under Section 549 and the creditors remain

qualified under Section 303(b).

EALC's tax liabilities[7] deserve special mention since, although they are categorized as

Receiver Creditor Group claims, and the Receivership was charged with paying such claims,

EALC remained liable. One of life's proverbial certainties are taxes. Tax liabilities are not

discharged against an entity merely because its assets have been placed in receivership. *See e.g.*

*Rutos Aereoz Nacionales, S.A. v. United States*, 373 F.2d 213 (5th Cir. 1967); *In re Heilbron,*

*Wolff & Co.*, 224 A.D. 14, 15, 229 N.Y.S. 325, 326 (A.D. 1st Dept. 1928). CDR has not carried

its burden of demonstrating the existence of any actual factual or legal dispute as to EALC's

liability or the amount of the taxes owed to the taxing authorities as of the Petition Date and,

accordingly, these claims must be counted.

### EALC is Not Estopped By Earlier Deposition Testimony From Asserting That it Had Twelve or More Creditors on the Petition Date

CDR argues that EALC is somehow estopped from asserting that it had twelve or more

creditors as of the Petition Date by virtue of the deposition testimony of EALC's Vice President,

Jeffrey Stoler. Mr. Stoler appeared to testify at a deposition that, to the best of his knowledge at

the time, EALC had fewer than twelve creditors. Mr. Stoler is not a lawyer, and he adequately

explained his prior deposition testimony at trial. Significantly, the cases cited by CDR in its

estoppel argument all relate to summary judgment motions. This is not a summary judgment

motion. If it were, the Court would be obligated to view the evidence in the light most favorable

---

[7] The New York City Department of Taxation and Finance held a claim against EALC as of the Petition Date for General Corporate Tax as well as Commercial Occupancy Tax for the period March – May, 2006. The New York State Department of Taxation and Finance held Sales and Franchise Tax claims against EALC as of the Petition Date.

43344/0002-3103074v2

to EALC and would have to take into account all reasonable inferences which favor EALC. It is unlikely that CDR would agree that EALC should be the beneficiary of such evidentiary presumptions here.

Although CDR does not use the term "judicial admissions", it appears that its argument for giving preclusive effect to Mr. Stoler's deposition testimony is based on that doctrine. Mr. Stoler's deposition answers, however, did not constitute judicial admissions. The doctrine is explained as follows:

> In general,
>
> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.
>
> *Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)*
> (quoting Michael H. Graham, Federal Practice and Procedure: Evidence § 6726 (Interim Edition); other citations omitted.)

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2001 U.S. Dist. LEXIS 4233, *8 - *9 (S.D.N.Y. 2001) *see also The Prince Group, Inc. v. MTS Products*, 1998 U.S. Dist. LEXIS 7835, *7 - *8 (S.D.N.Y. 1998) (deposition answers do not constitute judicial admissions).

## THE GENERAL CREDITOR GROUP

The General Creditor Group does not warrant as lengthy an explanation as the Receiver Creditor Group. Each member of this group possessed either a direct obligation of EALC or an obligation for which EALC is liable under agency law as the principal for its attorneys.

15

Those creditors directly billing EALC are Atlantic Bank (mortgage loan), Bryan Cave LLP (legal), CSC (agent for service of process), Davis Graber & Ward (accountants), Guy Ferreboeuf (legal), First American Title (indemnification obligations)[8], Guy Lesourd (S.C.P. – Avocat) (legal), Jenkins & Huntington (elevator consultant), Mina Sarwary (legal) and Morvillo Abromowitz (legal). Creditors who have a claim against EALC by virtue of it being a principal for its attorney agents are Counsel Press, LLC, Crowe Foreign Services, Green House Reporting, Inc. and TransPerfect Document Management. None of these creditors were paid with property of the estate. Although some of the legal service providers, such as Crowe Foreign Services, may be looking to hold EALC's attorney agent responsible for the unpaid bill, that in no way diminishes EALC's liability as principal for the obligations of its agent.

<u>None of the Claims Are the Subject of a Bona Fide Dispute</u>

A claim will be disqualified for Section 303(b) purposes if it is the subject of a bona fide dispute. *In re BDC 56 LLC*, 330 F.3d at 117-18. In order to determine whether a bona fide dispute exists as to a claim, the Second Circuit has adopted the following "objective test": "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt." *Id* at 117 *quoting In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987).

The bona fide dispute requirement was intended by Congress not to disqualify an alleged debtor's creditors from being counted under Section 303(b), but to prohibit overly aggressive

---

[8] As part of the mortgage loan transaction with Atlantic Bank, EALC was required to indemnify the title insurance company, First American Title, for its expenses incurred in connection with defending title. (Exhibit 244, ¶3)

creditors from commencing involuntary cases against entities as a collection device. As the

Second Circuit has noted:

> The reasoning behind the objective standard is that "[t]he
> legislative history makes it clear that Congress intended to
> disqualify a creditor whenever there is any legitimate basis for the
> debtor not paying the debt, whether that basis is factual or legal.
> Congress plainly did not intend to require a debtor to pay a
> legitimately disputed debt simply to avoid the stigma of
> bankruptcy."

*In re BDC 56, LLC*, 330 F.3d at 117-118 *quoting In re Lough,* 57 B.R. 993, 997 (Bankr. E.D.

Mich.1986).

Consistent with the purpose of the bona fide dispute requirement, in the ordinary case, it

is the alleged debtor who may assert the existence of a bona fide dispute with regard to a

petitioning creditor's claim. The attempt by CDR to assert a bona fide dispute is, at best, a

perversion of the intent of the rule. In the ordinary case, the initial burden is on the petitioning

creditor to demonstrate a *prima facie* case that his claim is not subject to a bona fide dispute.

Once that *prima facie* case has been established, the burden shifts to the alleged debtor to

demonstrate the existence of a bona fide dispute. *In re BDC 56 LLC*, 330 F.3d at 118. Here,

however, it is the petitioning creditor asserting the existence of bona fide disputes. In this

context, the burden of proof, while initially with the Alleged Debtor to prove the existence of

more than 12 creditors, shifted to CDR once EALC filed its verified list of creditors. *In re*

*Global Waste Co.,* 207 B.R. 542, 544 (Bankr. N.D. Ohio 1997); *In re Braten*, 99 B.R. 579, 583

(Bankr. S.D.N.Y. 1989).

CDR's assertion that hypothetical bona fide disputes exist with EALC's creditors is

simply a red herring. With the exception of the two claims which it withdrew at trial, <u>EALC did</u>

<u>not and does not dispute its liability, or the amount of such liability with regard to any of the</u>

claims listed on the Third Amended Creditors List. In cases where debtors have admitted the

validity of a debt, courts have generally found that no bona fide dispute exists. *See In re*

*Hentges*, --- B.R. ---, 2006 WL 2766060 (Bankr. N.D. Okla.) at *7 and *9 (admissions as to

existence of debt sufficient to establish that no bona fide dispute existed); *In re Faberge*

*Restaurant of Florida, Inc.*, 222 B.R. 385, 388 (Bankr. S.D. Fla. 1997) (post-petition payments

constitute an admission that claim was not the subject of a bona fide dispute); *In re Onyx*

*Telecommunications, Ltd.*, 60 B.R. 492, 497-98 (Bankr. S.D.N.Y. 1985) (pre-petition letter

admitting existence of debt of $75,000 held sufficient to withstand motion to dismiss based upon

bona fide dispute); *see also In re Dilley*, 339 B.R. 1, 6 (1st Cir. BAP 2006) ("Courts have

recognized that 'a bona fide dispute exists when the debtor has not admitted liability to the

petitioning creditors nor have the creditors proven the debtor's liability'.") (emphasis added); *In*

*re Reid*, 773 F.2d 945, 947 (7th Cir. 1985) (same).

      Here, the only entity alleging the existence of a bona fide dispute is CDR. CDR,

however, is without standing to allege the existence of a bona fide dispute with regard to claims

against EALC. Prior to the Petition Date, CDR was without standing to dispute other creditors'

claims against EALC under New York State law. Even post-petition, creditors, such as CDR, do

not have standing under bankruptcy law to allege the existence of a bona fide dispute in order to

argue for dismissal of an involuntary case. *See In re MarketXT Holdings Corp.*, 347 B.R. 156,

159 (Bankr. S.D.N.Y. 2006). While Section 502(a) might possibly confer such standing upon a

creditor after an order for relief is entered, Section 303(b), as CDR so often argues, is concerned

with whether claims are qualified before the filing of a petition.

      The inability of a creditor to manufacture a dispute between an alleged debtor and its

other creditors is manifested by the requirement that there must be an actual, as opposed to a

<u>potential</u>, bona fide dispute which existed as of the petition date in order to disqualify a claim under Section 303(b).  *Petralex Stainless, Ltd v. Bishop Tube Division of Christiana Metals (In re Petralex Stainless, Ltd.)*, 78 B.R. 738, 744 (Bankr. E.D. Pa. 1987) ("the clear language of the Code does not include debtors which should, but which have not yet actually been disputed").  In *Petralex*, a creditor of an alleged debtor argued that a petitioning creditor's claim "*should* be disputed because the by-laws prohibited [another partner] from entering contracts with related entities … without board approval." *Id*.  The court found that "the clear language of the Code does not include debtors which should, but which have not yet actually been, disputed" and noted that it was guided by the plain meaning of the statutory words in its interpretation. *Id*.  Further, the *Petralex* court found that the non-petitioning creditor "…offered no proof that this debt [owed to the petitioning creditor] is now disputed; no proof that the board does dispute this debt; no proof that the board would not, if asked, approve this debt; no proof that the board ever disputed this debt, and no proof that the services invoiced … were not provided." *Id* at n.19.  CDR's argument advances to this Court that many of the claims against EALC *should* or *could* *hypothetically* <u>be</u> disputed is of no merit.  Here, as in *Petralex*, CDR provides <u>no proof</u> that any of the listed claims <u>are</u> or were ever disputed by EALC, no proof, that EALC would not, if asked, approve the debts, and no proof that the services invoiced were, in fact, not provided.

   CDR may not, as it has done here, manufacture hypothetical disputes <u>solely for the purpose of disqualifying creditors under Section 303(b)</u>.  *In re CLE Corp.*, 59 B.R. 579, 584 (Bankr. N.D. Ga. 1986) (dispute may not be "raised solely for the purpose of opposing the Petition.").  Nor will its assertion of creative defenses to the claims against EALC be sufficient to disqualify the claims under Section 303(b).  *Id* at 584.  The overwhelming weight of legal authority is that the claims against EALC are not the subject of a bona fide dispute.

<u>Atlantic Bank</u>

CDR's objection to the claim of Atlantic Bank is completely without merit. Mr. Stoler's trial testimony clearly established that Atlantic Bank was not the recipient of a fraudulent conveyance, and that all the proceeds of the loan from Atlantic Bank benefited EALC. The loan proceeds were used to satisfy EALC debts, which included real estate taxes for the Flatotel Property, title insurance, refinancing of a prior loan taken by Macson and used for building construction (which EALC was required to repay under the Franchise Agreement), and further building renovations. The bank holds a valid mortgage on the Flatotel Property, and it is a valid EALC creditor.

CDR has not established a *prima facie* case that Atlantic Bank was the recipient of a fraudulent conveyance. CDR admits that Atlantic Bank loaned $23 million pursuant to the subject loan transaction and admits that EALC received the bulk of the loan proceeds. CDR alleges, however, that the granting of a mortgage security interest pursuant to the secured loan transaction was fraudulent because approximately $5 million of the loan proceeds were used to pay off a loan to the Israel Discount Bank ("IDB") for which EALC was not liable and approximately $3.5 million of the loan proceeds were placed into a Macson account.

Assuming, *arguendo*, that CDR's version of events (which EALC disputes) is correct, that version nevertheless does not allow the maintenance of a fraudulent transfer action against Atlantic Bank. Atlantic Bank provided fair value to EALC in the form of approximately $23 million of cash loan proceeds. There is no dispute that Atlantic Bank actually disbursed these funds. If an action exists, it is against IDB which <u>allegedly</u> received $5 million of that cash <u>from EALC</u>. The bank gave cash in exchange for the security interest. If IDB provided no fair value

to EALC in exchange for the cash given to it at EALC's direction, the action for fraudulent transfer would lie against IDB not against Atlantic Bank.

Further assuming, for the sake of argument, that CDR is correct in its assertion that EALC received less than fair consideration for the mortgage, the transfer would still not be avoidable and Atlantic Bank would not be disqualified from being counted under Section 303(b). Section 278(2) of the New York Debtor & Creditor Law provides that a transferee who provided less than fair value is entitled, nonetheless, to retain the transfer as security for repayment so long as such purchaser did not have actual fraudulent intent. *See U.S. v. Mazzeo*, 306 F.Supp.2d 294, 322 (E.D.N.Y. 2004) ("New York Debtor and Creditor Law § 278(2) … allows a transferee who purchased fraudulently transferred property for less than fair consideration to retain the property as security for repayment of the consideration it did pay.  Thus, such a purchaser is entitled to recoup his investment, and any remaining value in the property goes to the plaintiff.")  No such fraudulent intent was evidenced at the Trial, and Atlantic Bank must be counted as a bona fide EALC creditor.

### The Subjective Beliefs of Any of EALC's Creditors Are Not Relevant to EALC's Liability With Regard to Such Claims

CDR makes the argument, in connection with those EALC creditors who performed services for EALC's counsel, that such creditors' subjective belief as to liability is dispositive as to the enforceability of such claims.  The text of Section 303 contains no language to suggest that the creditors' subjective belief is at all relevant to their qualifications to be counted as creditors. A party which expresses its belief that it does not possess a claim against another party cannot thereafter be forever estopped from asserting or enforcing its rights regardless of whether any of the elements of the doctrines of waiver, judicial admissions or collateral estoppel have been met. Simply put, a debt is a debt just as a rose is a rose.  Congress intended the broadest possible

21

interpretation of "claim" to apply, and the subjective beliefs of any of EALC's creditors are wholly irrelevant to whether the claims are qualified to be counted. Rather, the test is one of objective legal obligation rather than subjective thought.

## II.    THIS CASE SHOULD BE DISMISSED AS A BAD FAITH FILING AS THE PRODUCT OF A TWO-PARTY DISPUTE

This case should also be dismissed and the Court should abstain under Section 305 since it is a two-party dispute between EALC and CDR and CDR filed the involuntary petition in bad faith.

Bad faith in the filing of an involuntary petition has been defined in various ways by courts. *See e.g. Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992) (a disregard of bankruptcy law and procedure constitutes bad faith); *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 620 (9th Cir. B.A.P. 1986) (bad faith is a fact question to be measured against an objective test of what a reasonable person would have done); *In re Dino's Inc.*, 183 B.R. 779, 783 (S.D. Ohio 1995) (reckless disregard of facts constitutes bad faith); *In re Advanced Press & Litho., Inc.*, 46 B.R. 700, 703 (D. Col. 1984). According to a leading treatise, bad faith can be found if the "involuntary petition is found to be ill-advised." 2 *Collier on Bankruptcy* ¶ 303.12 (15th ed. 1979).

In determining whether the facts and circumstances of a case warrant a finding of bad faith, courts have focused on the petitioning creditor's purpose in filing the petition. Here, the petitioning creditors' purpose was to avoid a series of rulings from the NYSC-AD which, *inter alia*, will establish that CDR's mortgage claim had lapsed by operation of law, and is thus a nullity. This is a case of a petitioning creditor attempting to obtain a disproportionate advantage over other creditors rather than attempting to protect the general interests of creditors. *In re K.P. Enterprises*, 135 B.R. 174 (Bankr. D. Me. 1992). In considering whether bad faith exists, a court

can look to see if a petitioning creditor acted in a reasonable fashion or in reckless disregard of the truth or falsity of information. *In re Dino's supra* at 783. Prior to the Petition Date, the property was in a CDR imposed receivership, and in support of a stay pending appeal, CDR was receiving $1.5 million per month and there was on deposit $9 million so that the appeal could be heard. Bad faith has also been found where the involuntary petition is the product of a two-party dispute. *In re Oakley Custom Homes, Inc.*, 168 B.R. 232, 239 (Bankr. D. Col. 1994).

That this case is a textbook example of a bad faith filing is evidenced by the statement of CDR's counsel made at a hearing before the New York State Supreme Court on June 9, 2005, wherein counsel affirmatively acknowledged that it could not file an involuntary petition and stated:

> Judge, we do not have an option of going into Bankruptcy Court at this time, and I will say that for the record. CDR does not have an ability to force EALC into bankruptcy, notwithstanding the fact it is insolvent and is unable to meet its obligations.

(September 27, 2006 transcript pg. 1-81, lines 4-11)

Nevertheless, some 15 months later, CDR chose to violate a stay issued by the NYSC-AD (the "Appellate Division Stay") to file this case for the admitted purpose of selling the Flatotel Property. The stay had enjoined the sale of the Flatotel Property so long as $1.5 million per month was paid by Macson (for a total of $9 million) as the parties awaited a decision by the NYSC-AD on the three key *sub-judice* disputed actions. With no clear and present danger to its well being, other than the impending NYSC-AD decisions, one can only conclude that CDR's sole purpose for filing the involuntary petition was to avoid a ruling by NYSC-AD adverse to its position.

Bankruptcy courts generally have little difficulty dismissing involuntary bankruptcy cases predicated on two-party disputes where the parties have adequate remedies in non-

bankruptcy forums. *See In Remex Electronics Ltd. V. Axl Industries, Inc. (In re Axl Industries, Inc.)*, 127 B.R. 482, 484 (S.D. Fla. 1991) (bankruptcy courts "should not take jurisdiction over a two-party dispute, unless special circumstances exist."); *In re Nar Jor Enterprises Corp.*, 6 B.R. 584 (Bankr. S.D. Fla. 1980); *Westerleigh Development Corp.*, 141 B.R. 38 (Bankr. S.D.N.Y. 1992); *In re Kass*, 114 B.R. 308 (Bankr. S.D. Fla. 1990) (petition dismissed as petitioning creditors were attempting to use bankruptcy court as an alternative to litigation to resolve two-party dispute and adequate state law remedies existed); *In re Castle Mall, Inc.*, 127 B.R. 336 (Bankr. D. Del. 1991); *In re Win-Sum Sports, Inc.*, 14 B.R. 389 (Bankr. D. Conn. 1981); *In re Investment Corp. of North America*, 39 B.R. 758 (Bankr. S.D. Fla. 1984).

Section 305 of the Bankruptcy Code authorizes suspension or dismissal of the bankruptcy proceedings "if the interests of creditors and the debtor would be better served by such dismissal or suspension" 11 U.S.C. § 305(a)(1). In determining whether dismissal under Section 305 is warranted, courts have looked at various factors including:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

24

*In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002).

In this case, nearly all of the foregoing factors argue decisively in the direction of abstention. First, the actions between CDR and EALC pending in the NYSC-AD for which the automatic stay has already been lifted need to be decided before a bankruptcy card is played. Economy and efficiency of administration will best be served by either dismissing the petition or reserving judgment until the NYSC-AD rules. The pending actions in the state court satisfy the second factor. Third, federal proceedings are not necessary to reach a just and equitable solution. The parties have thorough and adequate remedies in state court. Fourth, CDR is the only creditor of a non-recurring type.

## CONCLUSION

For all of the foregoing reasons, this involuntary proceeding should be dismissed.

DATED:     New York, New York
            October 30, 2006

                           **COLE, SCHOTZ, MEISEL,**
                           **FORMAN & LEONARD, P.A.**

                           By: */s/ Frederick E. Schmidt*
                               Joshua J. Angel, Esq. (JA-3288)
                               Neil Y. Siegel, Esq. (NS-3216)
                               Frederick E. Schmidt, Esq. (FS-5277)
                           460 Park Avenue
                           New York, New York
                           (212) 752-8000
                           (212) 752-8393 (facsimile)

                           Attorneys for the Alleged Debtor, Euro-
                           American Lodging Corporation

43344/0002-3103074v2